UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 26-20081-CR-ALTMAN

UNITED STATES OF AMERICA,

vs.

EMMANUEL SYLVESTRE,

    Defendant.

_____/

## MOTION TO SUPPRESS

Emmanuel Sylvestre, through undersigned counsel, respectfully moves to suppress his statement to law enforcement on November 20, 2025, which he made without first receiving *Miranda*[1] warnings.  Because his statement was made while in custody, and he was not advised of his rights under *Miranda*, this Court must suppress his statement.  As explained below, the Court should grant this Motion to Suppress.

### A. Factual Background

On November 20, 2025, three law enforcement agents interrogated Mr. Sylvestre at his place of employment—Mila Apartments in North Miami Beach, Florida.  Mr. Sylvestre works at Mila in the maintenance department.  The agents spoke with Mr. Sylvestre's supervisor and said they needed to speak to Mr. Sylvestre.  Mr. Sylvestre was summoned to Mila's leasing office by his supervisor and interviewed in the break room with the door closed.  The agents did not advise

---

[1] *See Miranda v. Arizona*, 384 U.S. 436, 479 (1966)

Mr. Sylvestre of his *Miranda* rights or tell him that he was free to leave.  After the agents introduced themselves, they immediately began questioning Mr. Sylvestre about the facts from which this case arises.  The interview lasted approximately twenty minutes.

A few months later, a grand jury returned the indictment against Mr. Sylvestre, which charges him with false claim of citizenship in order to vote, in violation of 18 U.S.C. § 1015(f), and voting by alien, in violation of 8 U.S.C. § 611. (DE 1).  Trial in this case is scheduled for the two-week period beginning May 18, 2026, and calendar call is set for May 12, 2026.  (DE 18).

## B. Legal Standard

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  Based on the Fifth Amendment, "statements a defendant makes during a custodial interrogation may not be used against him in court unless the government first advises the defendant of his rights as set forth in *Miranda v. Arizona*, 384 U.S. 436, 479 (1966)."  *United States v. Woods*, 684 F. 3d 1045, 1055 (11th Cir. 2012). *Miranda* rights include "the right to remain silent, the right to have an attorney present during interrogation, and if the defendant is indigent, the right to have a lawyer appointed for him." *Id.* (citing *Miranda*, 384 U.S. at 479).

Because the *Miranda* warnings "protect the individual against the coercive nature of custodial interrogation, they are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'"  *J.D.B. v. North*

2

*Carolina*, 564 U.S. 261, 270 (2011) (citation omitted).  Whether a person is "in custody" is an objective inquiry.  *Id.*  "Normally courts apply a two-part test to determine whether a suspect is in custody for Miranda purposes: 'first, what were the circumstances surrounding the interrogation; and second, given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave.'"  *United States v. Acosta*, 363 F.3d 1141, 1148 (11th Cir. 2004) (quoting *Thompson v. Keohane*, 516 U.S. 99, 112 (1995)).  In applying this objective test, "the reasonable person from whose perspective 'custody' is defined is a reasonable innocent person."  *United States v. Moya*, 74 F.3d 1117, 1119 (11th Cir. 1996).

Under the totality of the circumstances, courts consider several factors when assessing whether a person is "in custody," such as "the location of the questioning . . . its duration . . . statements made during the interview . . . the presence or absence of physical restraints during the questioning . . . and the release of the interviewee at the end of the questioning[.]"  *Howes v. Fields*, 565 U.S. 499, 509 (2012) (internal citation omitted).  The freedom-of-movement inquiry involves determining "whether the relevant environment presents the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*."  *Id.* In other words, "whether a suspect is in custody turns on whether restrictions on the suspect's freedom of movement are 'of the degree associated with formal arrest.'"  *Moya*, 74 F.3d at 1119 (quoting *Minnesota v. Murphy*, 465 U.S. 420, 430 (1984)).

3

"The defendant bears the burden of showing that he was in custody when he made the contested statements." *United States v. Woodson*, 30 F.4th 1295, 1302 (11th Cir. 2022). "[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." *United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974). "[I]f a defendant shows that a confession was obtained while he was under custodial interrogation, the government then has the burden of proving that the defendant voluntarily waived his privilege against self-incrimination." *United States v. De la Fuente*, 548 F.2d 528, 533 (5th Cir. 1977).[2]

## C. <u>Argument</u>

Here, law enforcement did not read Mr. Sylvestre his *Miranda* rights before interrogating him on November 20, 2025. Therefore, the only question before the Court is whether Mr. Sylvestre was "in custody" during his interrogation. The circumstances described below demonstrate that he was in custody.

Mr. Sylvestre was interrogated by three agents at his place of employment. All three agents participated in the interrogation. The door was closed during the interview. Mr. Sylvestre was not told that he could leave. Nor was he informed that he could refuse to answer their questions. These coercive circumstances triggered Mr. Sylvestre's privilege against self-incrimination. *See United States v. Steele*, 648 F. Supp. 1375, 1378 (N.D. Ind. 1986) (suppressing defendant's statement

---

[2] All decisions rendered by the Fifth Circuit prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

because she was interviewed by two government agents at her job, "segregated from outside influences[,] and placed in an environment controlled by interrogators, [where] the forces of coercion work at their greatest").  The fact that Mr. Sylvestre was neither handcuffed nor locked-in does not make the interrogation any less coercive.  *See United States v. Gunning*, 405 F.2d 79, 84 (D. Mass. 2015) ("The fact that [the defendant] was never handcuffed, locked-in, or otherwise restrained does not preclude a finding that he was in custody for *Miranda* purposes."); *Steele*, 648 F. Supp. at 1379 (finding defendant was in custody even though she was not handcuffed, "locked in a detention facility," or "faced with a large number of police officers").

Mr. Sylvestre was not free to leave the interrogation because he was summoned to speak to the agents by his supervisor.  Because Mr. Sylvestre is an "at will" employee at Mila, his failure to cooperate with the agents could have led to his termination.  The "forces" used by the agents in this case "though admittedly more subtle, were no less coercive."  *See Gunning*, 405 F.2d at 84 (suppressing defendant's statement after he was interrogated at his job by two postal inspectors who "used [the defendant's] supervisor to summon him to the Postmaster's office where the interrogation took place," thus, "[t]he inspectors represented not only law enforcement authority, but the authority of the defendant's employer as well"); *see also Steele*, 648 F. Supp. at 1378 (suppressing defendant's statement and noting how the agents "solicited the help of the defendant's supervisor in approaching the defendant").

Moreover, the interview was coercive because it occurred after the FBI had already opened a criminal investigation looking into whether Mr. Sylvestre had voted unlawfully. (*See* USA_000001–04). In other words, the agents were interrogating Mr. Sylvestre with an eye towards prosecution. Indeed, the agents immediately confronted Mr. Sylvestre with questions regarding his alleged fraudulent voter registration and citizenship status. *See Steele*, 648 F. Supp. at 1379 (finding the circumstances of the interrogation were coercive where the defendant was "almost immediately confronted with the accusation"). Simply put, Mr. Sylvestre was outnumbered, summoned to his employer's office, placed in a closed-door room, and asked specific questions regarding the elements of the offenses for which he is now charged.

Together, these circumstances establish by a preponderance of the evidence that a reasonable person in Mr. Sylvestre's position would not have felt free to leave the interrogation. The surroundings, pressure inherent in the government's use of Mr. Sylvestre's employer to solicit him to the leasing office, and the accusatorial nature of the agents' questioning amounted to custodial interrogation. Because the agents did not provide Mr. Sylvestre with *Miranda* warnings before interrogating him, his subsequent statement must be suppressed.

### D. <u>Conclusion</u>

For the foregoing reasons, the Court should grant this Motion to Suppress and preclude the Government from introducing his statement into evidence.

Respectfully submitted,

**HECTOR A. DOPICO**
**FEDERAL PUBLIC DEFENDER**

By:     */s/Alexandra Hoffman*
Alexandra Hoffman
Assistant Federal Public Defender
Florida Bar No. 1011796
150 W. Flagler Street, Suite 1700
Miami, Florida  33130
Tel:   305-530-7000
E-Mail Address: alexandra_hoffman@fd.org

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on April 28, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

*/s/Alexandra Hoffman*
Alexandra Hoffman

7